### W. E. GUERIN V. MARY PATTERSON ET AL.

(Case No. 4350.)

1. PRACTICE IN SUPREME COURT.— A ruling of the district court which, though abstractly erroneous, did not prejudice the rights of appellant, will not constitute a ground for reversal of the judgment.

2. BURDEN OF PROOF — NEGOTIABLE NOTE — CHARGE OF COURT.— The possession by plaintiff of a note payable to order, and held by him before maturity, constitutes, in a suit thereon, a *prima facie* case entitling him ordinarily to recover; the burden of proof is then shifted upon defendant, and in such case, where the real issues were ownership of the note by plaintiff, and payment, a charge of the court that the burden of proof is upon the plaintiff, and to entitle him to recover he must "satisfy the jury by a preponderance of evidence that he is entitled to recover," *held* error, which, under the peculiar facts of the case, required a reversal.

APPEAL from Ellis.   Tried below before the Hon. Geo. N. Aldridge.

The opinion states the case.

*McCormick & Templeton*, for appellant.

*John L. Cheek*, for appellees.

BONNER, ASSOCIATE JUSTICE.— Nathan Patterson and Wilson S. Patterson, late merchants and partners under the firm name of N. Patterson & Son, doing business in Columbus, Ohio, being in failing circumstances, made a deed of assignment to appellant W. E. Guerin, of date September 28, 1877.   Subsequently Wilson S. Patterson, the son, absconded, carrying with him a large amount in money, $12,280, assets of the late firm.   The father, Nathan Patterson, came to Texas and purchased a tract of land near Ennis from Moses M. Allen, for which he paid him in money $200, and executed and delivered to him, payable to his order, two promissory notes, both of date June 3, 1878, one for $565, due January 1, 1879, and the other for $1,200, due January 1, 1880, both bearing interest from date, and retaining a lien upon the

land to secure their payment. These notes, on the day they were executed, and almost simultaneous with their delivery, were transferred by the payee, Allen, by indorsement in blank without recourse on him. This indorsement was made in consideration of money paid to Allen through T. L. McCarty, who acted in the sale of the land as agent for both Patterson and Allen, and which money McCarty testifies that he had received at two different times from Nathan Patterson, but which had been deposited in bank in the name of McCarty. The testimony of Allen tends to prove that he received in money $50 less than the principal of the two notes, but McCarty, who was acting as his agent, swears positively that Allen received the full amount of the principal. McCarty, Allen, Nathan Patterson and an old gentleman by the name of Wilson, and who was a brother-in-law of Patterson, were present. Wilson left soon afterwards for his home in the state of Ohio, and his testimony is not taken to throw light upon the transaction. It is in evidence that after the payment of the money to Allen, Nathan Patterson picked up the notes from the table on which they were lying and put them into his pocket. As disclosed by the testimony, they were next heard of in the possession of the son, Wilson S. Patterson. They subsequently came into the possession of the assignee, Guerin, through the attorney of Wilson S. Patterson, after he had been arrested as an absconding debtor, but whether delivered up by him voluntarily or under duress, the testimony is conflicting. Guerin, as such assignee, obtained possession of the notes in May, 1878, prior to the maturity of the one for $1,200.

Nathan Patterson, subsequently to the execution of the notes, died. The notes having come into the possession of Guerin, the assignee, this suit was brought by him against Mary Patterson, the wife of Nathan Patterson, and also against his children, including the son, Wilson S.

Patterson, it being alleged that there was no administration on the estate of N. Patterson, and none necessary, and it being proven that he owed no debts to Texas creditors. Guerin, the plaintiff below, alleged that he held and owned the notes as such assignee, and prayed judgment upon them and for the enforcement of the lien on the land. He further alleged that if it should be shown that they had in fact been paid, that the payment had been made out of assets of the late firm of N. Patterson & Son, to which he was entitled as assignee, and that therefore he was equitably entitled to the land as such assignee, and prayed for this in the alternative.

Judgment upon verdict of a jury was rendered against assignee Guerin, plaintiff below, from which he prosecutes this appeal.

There are fifteen alleged errors assigned. One of these is that the court erred in sustaining the demurrer of defendants, which presented the question that plaintiff Guerin could not sue as an assignee appointed by the laws of Ohio, a sister state.

The petition alleged the appointment of Guerin as an assignee, both by the deed of assignment made by N. Patterson & Son, and also by a probate court under the insolvent laws of Ohio.

It does not become necessary to decide what the laws of Ohio are in regard to the appointment of an assignee for an insolvent debtor, or what rights an assignee under such appointment would have in this state.

It is sufficient for the purposes of this appeal to say that the court below permitted him to prosecute this suit as assignee by virtue of his appointment by the deed of assignment itself; and that, if the court below erred, it was under the circumstances but abstract error which did not prejudice the rights of plaintiff.

The eleventh error assigned is that the court erred in

giving the following instruction to the jury in the closing paragraph of the charge:

" The burden of proof in this case is upon the plaintiff, and, to entitle him to recover herein, he must satisfy you by a preponderance of evidence that he is entitled to recover."

This will be considered in connection with the following assigned error:

"The court erred in refusing to grant plaintiff's motion for a new trial because the verdict of the jury was contrary to the law and the evidence, in this:

*First.* "Because the evidence showed clearly that the notes in suit were undischarged; that they were the property of plaintiff as assignee; and that as assignee he was entitled to recover on them."

*Second.* "Because the evidence showed clearly that Wilson Patterson obtained the notes with funds belonging to plaintiff as assignee; that N. Patterson put the notes in circulation; that plaintiff as assignee was the holder and owner thereof."

*Third.* "Because the evidence of the plaintiff entitled him to a verdict, and was not contradicted nor overthrown by the evidence of the defendants."

It has been the uniform practice of this court from an early day not to disturb the verdict of a jury rendered upon conflicting testimony, unless in exceptional cases, when there was so great a preponderance of evidence against the verdict as to show that it was manifestly wrong. Embarrassment has frequently been felt in the application of this rule, when, from the case as presented by the record, we as jurors would have decided otherwise. The practice, however, has been sustained because of the desire of the court not to infringe upon the province of the jury, and because of the necessity of the rule, as otherwise litigation would be protracted. The remedy in

proper cases, as has been repeatedly said, is with the judge presiding below, who not only has the right but *whose duty it is* to set aside improper verdicts. Willis *v.* Lewis, 28 Tex., 191.

But if a verdict which does not satisfactorily appear to accord with the evidence may, in our opinion, have been improperly influenced by a charge of the court, then we feel at liberty to interfere.

In the case under consideration we are of opinion, in view of all the evidence, that the jury may have been thus influenced by the charge of the court that the burden of proof was upon the plaintiff Guerin, and that he must have satisfied them that he was entitled to recover by a preponderance of the evidence, however correct that charge may have been as a general rule.

The testimony shows that the plaintiff Guerin was the holder of the note for $1,200 before its maturity, under indorsement by the original payee. This constituted a *prima facie* case which ordinarily would have entitled him to recover, and the burden of proof was shifted upon the party who would defeat this right. The real issue on this branch of the case was whether the notes had in good faith been paid by Nathan Patterson, and if not, sohuld Guerin's legal title to them be defeated by showing that as assignee he was not entitled to them.

We are by no means prepared to say that the jury would have returned the same verdict had the charge not thrown the burden of proof, and the preponderance of evidence on those issues, upon the plaintiff.

The testimony shows that Nathan Patterson came to Texas, leaving a very large proportion of the indebtedness of the firm of N. Patterson & Son still unpaid, after the assignee had exhausted the available assets which came into his hands. That Nathan Patterson said that he had to borrow money to enable him to come to Texas. After coming here, the money which was advanced to

pay Allen for the notes was kept in bank in the name of McCarty. That the son, Wilson S. Patterson, had absconded with a large amount in money, assets of the firm. That though the notes were dated June 3, 1878, and payable respectively January 1, 1879 and 1880, they were taken up almost immediately after their execution and delivery, by money placed in the hands of McCarty by Nathan Patterson, the maker, himself, leaving, however, outstanding by the recitals in the face of the deed, the lien upon the land to secure the payment of these notes. There is no explanation given from what source Nathan Patterson received this money, though under the circumstances the burden of this proof would naturally be upon the defendants. The notes were afterwards found in the possession of the son, Wilson S. Patterson, in a distant state, but by whom sent to him, and the circumstances connected with his receiving them, does not fully or satisfactorily appear.

Under the evidence as disclosed by the record, we are of opinion that the assigned errors above set out were well taken, for which the judgment below is reversed and the cause remanded.

It does not become necessary to pass upon the other alleged errors.

REVERSED AND REMANDED.

[Opinion delivered April 28, 1881.]